UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEPHEN ROBINSON,                      )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )  Civil No. 09-253-P-H
                                       )
CHRIS CALLAHAN, et al.,                )
                                       )
                                       )
          Defendants                   )

**RECOMMENDED DECISION ON MOTION TO DISMISS AND
ORDER ON MOTION TO STRIKE MOTION TO DISMISS**

Stephen Robinson has filed a civil rights action naming defendants from Maine and New Hampshire.[1]  Robinson's complaint arises from his arrest in Maine for a violation of the conditions of parole set by New Hampshire, parole that he was serving at his residence in Damariscotta, Maine under the supervision of a Maine probation officer.  Pursuant to Federal Rule of Civil Procedure 12(b)(2), the New Hampshire State defendants -- Chris Callahan, Alan Coburn, John Eckert, George Iverson, George Khoury, and Jeanne Stewart  -- have filed a motion to dismiss for lack of personal jurisdiction.  (Doc. No. 22.)  All but one of these defendants Robinson alleges is affiliated with the New Hampshire Parole Board; Stewart is listed as affiliated with the New Hampshire Interstate Compact for Adult Offender Supervision.  Robinson has responded with a motion to strike the motion to dismiss.  (Doc. No. 27.)  I now deny the motion to strike and as to the motion to dismiss I explain my recommendation below.

---

[1]        Robinson has another suit pending in this court.  See Robinson v. Westrum, Civ. No. 09-211-P-S (D. Me.).

*Discussion*

***Motion to Strike and the Failure of Robinson to File a Proper Response to the Motion to Dismiss***

      I deny Robinson's motion to strike the defendants' motion to dismiss.  His reasoning for making this request is: "The Defendants' argument is immaterial and impertinent, if not scandalous, to this Court's authority in this Federal Civil case, by virtue of the spurious approach to considering New Hampshire public officials immune from a complaint in a District of Maine." (Mot. Strike at 1.)  To the contrary, there is nothing inappropriate about the defendants' Civil Rule of Procedure 12(b)(2) motion.

      District of Maine Local Rule 7(b) provides: "Unless within twenty-one (21) days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection." As for Robinson's failure to file a cognizable response to the motion to dismiss, it is within the district court's discretion to dismiss an action based on a party's unexcused failure to respond to a dispositive motion when such response is required by local rule, at least when the result does not clearly offend equity."  NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002) (footnote omitted) (citing See Pinto v. Universidad De Puerto Rico, 895 F.2d 18, 19 & n. 1 (1st Cir.1990)). But this discretion "'is not unbridled.'"  Id. at 7 n.6 (quoting United States v. Roberts, 978 F.2d 12, 20 (1st Cir. 1992)).  In this instant case -- in view of the fact that Robinson is proceeding pro se, does indicate that his recent release from the New Hampshire State Prison has hindered his legal research, and has filed a pleading in response and opposition to the motion to dismiss --  I think it is appropriate to proceed with a analysis of the merits of the Rule 12(b)(2) motion as best

as possible despite the disadvantages of not having a legitimate response to the motion or a full reply.[2]

**_Motion to Dismiss_**

In analyzing this motion to dismiss I consider the allegations of Robinson's complaint and the exhibits provided by the defendants that are appropriate to subject matter jurisdiction. See  Aguilar v. U.S. Immigration & Customs Enforcement Div. of Dept. of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007) (observing that if "well-pleaded factual averments " "are illuminated, supplemented, or even contradicted by other materials in the district court record," the court "need not confine [its] jurisdictional inquiry to the pleadings, but may consider those other materials.").

With respect to the context for the actions of these defendants of which Robinson complains, in the spring of 2008, Robinson applied for a transfer of his parole supervision from New Hampshire to Maine through the Interstate Commission for Adult Offender  Supervision. (See Doc. No. 22-3.) In this application he indicated that he understood that if he did not comply with all the terms and conditions of the sending state or receiving state that it would be considered a violation and he could be returned to New Hampshire as the sending state.  (Id. at 1.)  He also consented to the release of any drug or alcohol treatment from New Hampshire to Maine for the purpose of transferring his supervision.  (Id.) He further agreed to return to New Hampshire at any time he was directed to do so by New Hampshire or Maine, and he waived his right to formal extradition proceedings.  (Id.)

---

[2]        The defendants' response to the motion to strike is certainly appropriate and I am not suggesting that they had an obligation to file anything more under the circumstances. My point is, had Robinson filed a response that adequately addressed the arguments made by the defendants, the defendants would have had a better handle on the points in contention.

       With regards to his complaint allegations, Robinson alleges that he was residing in his residence in Damariscotta, Maine -- serving the remainder of his New Hampshire term of supervision under the compact -- when on October 20, 2008, he made his daily visit to the Damariscotta Police Department.  (Compl. ¶¶ 1, 2.)   A receptionist smelled alcohol on Robinson's breath, suggesting a violation of the terms of his New Hampshire probation, and Robinson was conveyed immediately to the Two Bridges Regional Jail.  (Id. ¶ 2.) After a positive breath analyzer test, Robinson was arrested and booked into the jail.  (Id. ¶ 3.)  Robinson was incarcerated from October 20, 2008, through December 17, 2008, and the allegations of his complaint during this period pertain to his treatment by Maine individuals.  (See id. ¶¶ 4-9.)  He does allege that during this time he unilaterally sent a letter to the New Hampshire Parole Board Chairman, George Khoury, complaining that Maine authorities had failed to correct his report and presenting his version of the alleged violation.  (Id. ¶ 6.) It is Robinson's contention that this letter was ignored and his belief that this violated his First Amendment rights.  (Id. at 21.)

       With respect to the involvement of the New Hampshire Parole Board, Robinson alleges that, unbeknownst to him, on November 3, 2008, a probation/parole violation report was sent to the New Hampshire Parole Board.  (Id. ¶ 10.)  Also unbeknownst to Robinson, the New Hampshire Parole Board issued an affidavit[3] and warrant for his arrest and a request for his detainment, dated December 3, 2008, forty-four days after Robinson's initial arrest and incarceration.  (Id. ¶ 4.) (So, thirty days elapsed between the sending of the report to New Hampshire and New Hampshire's issuance of the action request.)  Somewhat undermining his case that this conduct violated his rights, Robinson points out that the affidavit requested that

---

[3]      The affidavit references a September 17, 2008, violation for possessing ammunition, and two other alcohol-related violations – in addition to the October 20 violation -- one on August 15, and the other September 17.  (Doc. No. 1-3 at 1.)

4

Maine, as the asylum state, conduct a probable cause hearing, (Compl. at 15, 18, 21; Doc. No. 1-3 at 1), although Robinson does make an assertion that the New Hampshire Parole Board had an obligation to check whether this request was fulfilled.

Accompanying Robinson's complaint is a copy of the Interstate Commission for Adult Offender Supervision "Compact Action Request" from New Hampshire to Maine. (Doc. No. 1-3, at 2.)  It states:  "Please find attached a copy of the NH Parole Board Arrest Warrant on subject. Please lodge this as a detainer and advise when subject is available for retake."  (Id.)  The supervising officer is listed as Chris Callahan, Assistant Director/Central, and the Compact Administrator/Designee is listed as Jeanne Stewart. (Id.)[4]

Robinson filed a state petition for habeas corpus relief in the Maine Courts on January 23, 2009.  (Id. ¶ 14.) On January 30, 2009, two New Hampshire officers (not named as defendants) appeared at the Two Bridges Regional Jail to extradite Robinson.  (Id. ¶ 15.)  Robinson was given his personal clothing to wear for the trip and all other personal effects were boxed and given to the escorting officers. (Id.)  When he arrived at the New Hampshire State Prison he was not given an opportunity to inspect his belongings and was given only those personal papers deemed "legal," a determination made by  "unknowing," non-defendant booking officer.  (Id. ¶ 16.)

On approximately February 24, 2009, Robinson appeared before two members of the Parole Board, Chairman Alan Coburn and George Iverson.  (Id. ¶ 18.)  John Eckert, the Executive Assistant and Chris Callahan, Chief Probation/Parole Officer, were also present.  (Id.) Although classified as a minimum risk inmate, Robinson was handcuffed and forced to deal with

---

[4]       The defendant's response to the motion to strike does not address this document; they seem to think that the attachments referred to by Robinson were meant to be to his motion to strike and not those filed with his complaint.

this hindrance while writing notes and handling papers.  (Id.)  He was still able to hear and

speak.  (Id.)  However, during the "short, perfunctory hearing," Robinson was "entirely

precluded from speaking in his own defense"; he was only able to state his desire that the Board

would read his written explanation of his extenuating circumstances prior to arriving at a

decision. (Id. ¶ 19.) According to Robinson, Coburn made an agreeable proposal to insist on

additional counseling on a non-resident basis as a sanction for Robinson's violations but Iverson

stated that he considered Robinson to be a "menace to society," noted that he resisted extradition,

and opined that he should serve the remainder of his sentence incarcerated, or to "max out."  (Id.

¶ 19.)  Several days later, Robinson received the written decision of the Parole Board

Revocation hearing directing him to serve out the remainder of his sentence in the New

Hampshire State Prison. (Id. ¶ 20.)   Shortly after this, Robinson wrote to John Eckert, Executive

Assistance of the Parole Board requesting reconsideration and repeating his reason for the

request and shortly thereafter he received a short note denying this request.  (Id. ¶ 21.)

     In addition to setting forth factual allegations in his complaint, Robinson has summarized

the actions which he thinks have violated his constitutional rights.  Only two of the seven

complaints concretely relate to actions taken by New Hampshire parole board.  Robinson states:

"Parole Board Delinquent in Allowed Time to Respond and Request Extradition" and "Parole

Board Revocation Hearing Deficient in its Deliberations to Revoke Parole."  (Compl. at 9, ¶¶ E,

F.)  With respect to the former of these theories, Robinson explains in the body of his complaint

that New Hampshire, as the sending state under the compact, "merely issued a tardy arrest

warrant.  Up to that time, plaintiff was not a fugitive, yet he had already been arrested without a

warrant and incarcerated illegally for some 44 days."  (Compl. at 12-13.)

     He summarizes:

> The NH Parole Board was delinquent in a number of instances.  They are: (1) Did not process and respond in a timely manner when first notified of Plaintiff's alleged probation violation; (2) ignored Plaintiff's direct letters to The Board, presenting extenuating circumstances behind the alleged violation and his rehabilitative successes achieved to date; (3) the Parole Board response (arrest warrant) contained a requirement for asylum state to conduct a preliminary hearing but did not assure that it had done so; (4) once asylum state ordered extradition, Board ignored Plaintiff's legal appeal requesting writ of habeas corpus which it was legally obligated to await for a reasonable period of time; (5) yet allowed excessive time (Beyond legal limits) to expire between issuance of the arrest warrant, actual extradition, and Parole Board revocation hearing; (6) conducted an abrupt hearing wherein Plaintiff  was not allowed to speak on his own behalf; and (7) changed after the hearing, the terms discussed during the hearing which the Plaintiff agreed, that is, he would return to his residence and seek out-patient counseling for Parole Board's approval.

(Id. at 20.)  With regards to the fact that Robinson had filed a writ of habeas corpus in the Maine court, Robinson argues that the failure to delay extradition until the resolution of that matter demonstrated "arbitrary and capricious behavior with malicious intent."  (Id. at 21.)[5]

Before turning to the analysis of the personal jurisdiction dispute I note that in their motion to dismiss and in their response to Robinson's motion to strike defendants focus heavily on the initial transfer of supervision from New Hampshire to Maine as being their key contact with Maine.  (Mot. Dismiss at 4, 5, 6; Resp. Mot. Strike at 2.)   With respect to the extradition request, they assert that there is no allegation in the complaint that any of the individual defendants sought extradition. (Mot. Dismiss at 4.) As Robinson points out in his motion to strike, he did allege that he addressed a letter to Khoury concerning his revocation in Maine and

---

[5]        On May 1, 2009, the Maine Law Court denied Robinson a certificate of probable cause (Doc. No. 1-9), so in hindsight it is hard to see how Robinson was disadvantaged by the New Hampshire defendants' failure to wait for that resolution.  I also note that Robinson clearly is complaining in this action that the New Hampshire defendants are somehow liable for not seeking his return in an expeditious fashion after they were notified of the violations of the terms of his release.

points out that Stewart's name appears on the compact action request.  (Mot. Strike at 1.)[6] The defendants have had access to this document since the electronic docketing of Robinson's complaint. It is true that there are no allegations in this complaint that Coburn, Iverson, or Eckert had any contact with Maine.   In making their argument for Rule 12(b)(2) dismissal the defendants have not made a distinction between the six defendants and the personal jurisdiction state long-arm and the Fourteenth Amendment due process inquiries. For his part, Robinson often describes the wrongs done by "the Parole Board."   In the following analysis, I look at the arguments pros and cons according to the way that the defendants have chose to brief it. However, at the end I discuss the individual contacts of each defendant so that the parties can respond to the matter should they wish to file an objection to my recommendation.  This approach is partly made necessary by Robinson's failure to appropriately respond to the motion to dismiss and the defendants' response to his motion to strike which does not address Robinson's argument that he has alleged Maine conduct by some defendants.

*Analysis*

There is no question in this case that the resolution of the current Rule 12(b)(2) motion turns on Robinson's ability to prove the Court's personal jurisdiction over the defendants, see Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) and that the facts of this suit support at most a theory of specific, rather than general, personal jurisdiction, see Danyard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).   While there is more than one method for determining whether a plaintiff has met the personal jurisdiction burden, "'[t]he most conventional of these methods,' known as the 'prima

---

[6]     I am not sure why Robinson does not also point to the appearance of Callahan's name as supervising officer on that report.

facie' method,"' id. at 51 (quoting Foster-Miller, 46 F.3d at 145), "'permits the district court "to

consider only whether the plaintiff has proffered evidence that, if credited, is enough to support

findings of all facts essential to personal jurisdiction," ' "  Id. (quoting Foster-Miller, 46 F.3d at

145, quoting Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992)).  With neither side

counseling an alternative method, I proceed conventionally.

      "When subject matter jurisdiction is based upon diversity of citizenship, as it is here, a

federal court asserts personal jurisdiction in accordance with the law of the forum (here, Maine)

and the Fourteenth Amendment's due process clause." Maine Helicopters, Inc. v. Lance

Aviation, Inc., 563 F.Supp.2d 292, 294 (D. Me. 2008) (citing Sawtelle v. Farrell, 70 F.3d 1381,

1387 (1st Cir.1995)).  With respect to Maine law, the "Maine Law Court says that its statutory

analysis tracks the due process clause" but this Court has "examine[d] what the Maine cases

actually hold before turning to the federal analysis because if the Maine reading should turn out

to be narrower, a plaintiff should not obtain wider personal jurisdiction in a diversity case,

merely by bringing its case in federal court." Id. at 294-95.   The First Circuit has not limited

this approach to diversity cases, but has applied a similar analysis in federal question cases.

      The analysis is in accord with the First Circuit's approach in Hannon v. Beard, 524 F.3d

275 (1st Cir. 2008), in which the Panel examined a personal jurisdiction dispute that closely

parallels the one currently before the court.  In Hannon, a prisoner was challenging, among

others things, his transfer from Pennsylvania to a Massachusetts correctional facility and filed

suit in Massachusetts against multiple defendants, including the Secretary of the Pennsylvania

Department of Corrections who was involved in that transfer decision, as well as a Pennsylvania

prison law librarian who addressed the plaintiff's request for legal materials. Id. at 278-79.  The

Pennsylvania defendants challenged the assertion of personal jurisdiction over them in

Massachusetts.  The First Circuit Panel first addressed the Massachusetts Long Arm Statute

instead of turning to the due process inquiry because the plaintiff's claim involved the state

"officials' exercise of discretion, rather than a conventional contract or tort claim."  Id. at 280.

See also Kim v. Veglas, 607 F. Supp. 2d 286,291-92 (D. Mass. 2009).

> With respect to Maine's Long Arm Statute,

> the Maine Law Court holds that in the specific jurisdiction analysis, due process
> "is satisfied when: '(1) Maine has a legitimate interest in the subject matter of the
> litigation; (2) the defendant, by his or her conduct, reasonably could have
> anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's
> courts comports with traditional notions of fair play and substantial justice.' "
> Connelly v. Doucette, 909 A.2d 221, 223 (Me. 2006) (quoting Commerce Bank
> and Trust Co. v. Dworman, 861 A.2d 662, 666 (Me.2004)).

Id. at 295.

Given the attention that this Court has given to the question of personal jurisdiction in

Maine Helicopters, Inc., I will not belabor the analysis in this recommendation.  With regards to

the first factor highlighted by the Maine Law Court in its long arm analysis (which overlaps with

the fifth factor of the First Circuit's due process inquiry), Maine's interest as a party to this Adult

Offender Supervision compact is certainly "legitimate."  In one sense the compact agreement

obviously benefits many adults under supervision by facilitating the ability to serve terms of

supervision in a state other than that of conviction and it has pros and cons for the compacting

states.  That is, the sending state is relieved of supervisory obligations while the receiving state

shoulders the burden.  While there is discretion on both sides as to whether or not a particular

individual under supervision will be granted the request, the emphasis of this scheme, at least as

it relates to Robinson, is on accommodating requests of the person under supervision rather than

the supervising state.  In this instance, Maine was the state that shouldered the burden of

Robinson's request.  However, Maine obviously joined the compact in question because it saw

benefits flowing from this interstate arrangement for adult offender supervision so it has an interest in assuring that it operates smoothly and within the parameters of the United States Constitution.  See Hannon, 524 F.3d at 285 (observing as part of the due process inquiry that Massachusetts had an interest in assuring that transfers within the Interstate Corrections Compact were not "effected for illegal or retaliatory purposes," but observing that Pennsylvania as the sending state had the same interest).

As for the second requirement, whether these defendants would reasonably anticipate that because of their action alleged above Maine could be the site of litigation, it was the New Hampshire officials that reached out to Maine on Robinson's behalf vis-à-vis the application for the Interstate Compact Transfer.  John Eckert's name is listed on this request (Doc. No. 22-3 at 4) and Chris Callahan and Jeanne Stewart were involved in lodging the detainer towards bringing Robinson from Maine back to New Hampshire, the forty-four day delay in doing so is what Robinson complains.  New Hampshire officers came to collect Robinson in Maine, a prerequisite to the revocation hearing.

Turning to the third prong, fair play and substantial justice, "[u]nder the Maine cases, when a plaintiff satisfies the first two conditions, 'the burden then shifts to the defendant to prove the negative of the third condition.'" Maine Helicopters, Inc., 563 F.Supp.2d  at 296 (quoting Dworman, 2004 ME 142, ¶ 14, 861 A.2d at 666).  "The factors here are '["]the nature and purpose of a defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties.["]' " Id.  (quoting Dworman, 2004 ME 142, ¶ 18, 861 A.2d at 667,  quoting Labbe v. Nissen Corp., 404 A.2d 564, 570 (Me.1979)).  Conflating the Maine Long Arm standard with the analysis of the Massachusetts Long Arm provision

involved in <u>Hannon</u>, the moving defendants have not attempted to articulate their case as to these factors.

      The nature and purpose of the defendants' contact with the forum state clearly was to forward Robinson's request for a compact transfer and, then, to seek his arrest and transfer back to New Hampshire in light of his violations of his terms of release. There are just a few contacts between Maine and New Hampshire officials pertaining to Robinson but these contacts are directly related to Robinson's claims. (The number of compact contacts between Maine and New Hampshire personnel with respect to adults under supervision is not clear on this record.) With regards to the interest of Maine in the claims concerned here, Maine has an interest in the proper application of the compact rules but I do not see Maine as having an interest in adjudicating whether or not the New Hampshire Parole Board has a impermissibly high revocation rate and of requiring revoked inmates to "max out" their prison terms. (<u>See</u> Compl. at 23-24.) And, as for the convenience and fairness to the parties involved, with regards to the Maine forum, Robinson is apparently now residing in Maine, and there are interrelated claims and facts which involve the Maine defendants,[7] Geoffrey Rushlau and Patrick Delahanty, and the numerous non-party individuals involved on the Maine end that would likely be drawn into this litigation. As for a New Hampshire forum, certainly there are more New Hampshire defendants named than Maine defendants, although these defendants would seem to be the universe of New Hampshire witnesses material to Robinson's claims apropos the Parole Board conduct. <u>See</u> <u>cf.</u> <u>Astro-Med,</u> <u>Inc. v. Nihon Kohden America, Inc.</u>, __ F.3d __, __, 2009 WL 3384786, 6 (1st Cir. 2009) ("Once Rhode Island asserted uncontested jurisdiction over the breach of contract claim and the related

---

[7]    Robinson has named "John/Jane Doe, Maine Interstate Compact for Adult Offender Supervision Administrator" as a defendant (Compl. at i) but there has been no movement with respect to identifying and serving this individual.

misappropriation of trade secrets and unfair competition claims, the Florida and California

witnesses and evidence were heading for trial in Rhode Island.").

        With respect to the Fourteenth Amendment federal due process inquiry, Robinson

must satisfy a three-part test, showing: (1) his claims against the defendants are directly related

to their contacts to Maine; (2) their Maine contacts constitute purposeful availment of the

benefits and protections afforded by Maine's laws; and (3) jurisdiction in Maine is reasonable

under the First Circuit's gestalt factors. See Adelson v. Hananel, 510 F.2d 43, 49 (1ˢᵗ Cir. 2007);

Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d, 284, 288 (1st Cir.1999);  Maine

Helicopters, Inc., 563 F.Supp.2d  at 296.

        Robinson's claims against these defendants relating to their participation in the

revocation of his supervised release in Maine may be "analogized to tort claims" for purpose of

this inquiry, Hannon, 524 F.3d at 275, Kim, 607 F. Supp. 2d at 295 & n.3.  As already stated, the

claims against the New Hampshire defendants are directly related to the defendants' sending of

the compact action request to Maine authorities because that is where the revocation of his

probation by the New Hampshire defendants commenced.   I am unconvinced by the defendants'

argument that this case is distinguished from Hannon because the initial transfer of supervision

from New Hampshire to Maine was done at Robinson's behest. A fair reading of his allegations

is that his claims against these defendants turn on the extradition request and the eventual

revocation of his parole and not the initial transfer.  As for whether the defendants "purposefully

availed themselves of Maine laws' benefits and protections," it was Robinson that sought out his

transfer to Maine for supervision and not the New Hampshire authorities.  Compare Hannon, 524

F.3d at 284.   "The 'cornerstones' of purposeful availment are 'voluntariness and

foreseeability.'" Maine Helicopters, Inc., 563 F.Supp.2d  at 298  (quoting Sawtelle v. Farrell, 70

13

F.3d 1381, 1391 (1ˢᵗ Cir. 1995)).  In the end, I don't think it is a stretch to say that the defendants involved in the compact action request vis-à-vis the revocation took voluntary action that "'should have put them fairly on notice that [they] might one day be called to defend [themselves] in a [Maine] court.'"  Id. (quoting Jet Wine & Spirits, Inc., 298 F.3d at 11.)  These "contacts with Maine were entirely voluntary, not random or fortuitous or those of a third party." Id.  (citing Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir.1996).  Although Hannon involved the constitutional tort of retaliation I do not think that, in terms of voluntariness and foreseeability, this case, with the constitutional tort being Robinson's claim his rights were violated by an unwarranted revocation of his supervised relief, can be distinguished from Hannon's as it related to the responsibility of the Secretary of the Pennsylvania Department of Corrections for the transfer.  See Hannon, 524 F.3d at 284. The New Hampshire Parole Board defendants did "benefit" from its contacts with Maine in that Robinson was subjected to Maine laws and its jail in the process of its compact action request, Robinson's arrest and incarceration, and his eventual return to New Hampshire.  Id.

Finally, the factors making up the third due process prong, are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  Adelson, 510 F.3d at 51; accord Hannon,524 F.3d at 284.

The defendants, who are all represented by one state-employed attorney, complain that New Hampshire's current budget issues and staffing shortages present more than an ordinary inconvenience as the state attorneys do not have the resources to defend in foreign jurisdictions.

14

(Mot. Dismiss. at 6.)   It is a burden for the New Hampshire defendants to appear, but not a great

– or "special and unusual" --  one, especially given the geographical proximity of the two states.

See, e.g., Adelson v. Hananel, 510 F.3d 43, 51 (1st Cir. 2007) ("Admittedly, Hananel lives and

works in Israel and is a legally blind diabetic. While those facts evoke sympathy for the

undeniable burden placed upon Hananel, the district court properly concluded that no "special or

unusual burden" existed here."); Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14, 26 (1st Cir.

2005) ("The only possible gestalt factor that could turn in Davis' favor is the defendant's burden

of appearing, and Davis presents no argument why the burden of defending a suit in New

Hampshire from New York outweighs the factors favoring New Hampshire."); Kim, 607 F.

Supp. 2d at 295 ("[The Maine defendant] has not indicated that defending Kim's suit in

Massachusetts would be an unreasonable burden.")  I do not see it as too great a burden to have

these defendants appear in Maine, particularly given the ability to handle most of the litigation

through electronic filings and telephonic conferences and hearings.[8]  Moving on, as I already

observed, with respect to its interest, Maine obviously joined the compact in question because it

saw benefits flowing from this interstate arrangement for adult offender supervision so it has an

interest in assuring that it operates smoothly and within the parameters of the United States

Constitution.  See Hannon, 524 F.3d at 275.  This distinguishes this case from Harlow v.

Children's Hospital, where the Panel was skeptical of a more generalized interest in substantive

social policies such as the availability of quality health care.  432 F.3d 50, 68 (1st Cir. 2005).  As

---

[8]     Although I do not rely on this observation in making my recommendation, I cannot help but note here that having reviewed this dispute through the Rule 12(b)(2) lens which allows for consideration of appropriate attachments relating to the extradition, that there will most likely be Rule 12(b)(6) motions to follow shortly. Assuming this is the case, if such motions have merit, the defendants will not be anymore burdened by this case remaining in the Maine District Court as opposed to having it opened in the New Hampshire District Court.  Much of  Robinson's complaint is premised on a legal argument and despite his characterization of some of the defendants as acting capriciously and maliciously, there may be purely legal reasons that prevent some or all of his claims from proceeding.

15

in Maine Helicopters, Inc., Robinson's "interest calls for a Maine forum because it is cheaper and more accessible" to him.  563 F. Supp.2d  at 298.  At the time that Robinson filed his complaint he indicated that he was incarcerated in the New Hampshire State Prison (Compl. ¶22), but the Court has his address as being in Damariscotta, Maine, since his release; Robinson's most convenient forum would be this court.   I would say that the judicial system's interest in the most effective resolution of the controversy argues for allowing at least part of this action to remain in this forum.  This case involves overlapping constitutional claims against the Maine defendants and at least some of the moving defendants that are effectively addressed together and, although the New Hampshire District Court may have more familiarity with the legal framework of parole revocation hearings in that state, see Northern Laminate Sales, Inc., 403 F.3d at 26, there is no reason that this Court "cannot effectively resolve" a 42 U.S.C. § 1983 dispute between Robinson and the New Hampshire defendants. See Hannon, 524 F.3d at 275.[9]  Finally, as for the common interests of all sovereigns in promoting substantive social policy, the Court reflected in Hannon:

> the interests of all sovereigns in promoting substantive social policies may weigh slightly in Hannon's favor. The substantive social policy, that transfers pursuant to the Compact should not be effected for illegal or retaliatory purposes, suggests that this issue could be litigated in Massachusetts. However, this factor does not weigh particularly in Hannon's favor because the same interest would be served in a Pennsylvania district court.

524 F.3d at 285. As I have already noted, Robinson's claim is that his extradition from Maine to New Hampshire was illegal and ran afoul of his constitutional protections.[10] His is not a claim

---

[9]     As this inquiry demonstrates the question of personal jurisdiction is a close call and it would seem that the Maine defendants would have an equally persuasive argument as to why the New Hampshire District Court does not have personal jurisdiction over them.

[10]     I am not here fully construing the elements of Robinson's cause of action, nor am I at all measuring the merits of any claim. Robinson relies heavily in his complaint on the state statutes and regulations pertaining to the compact but, clearly, his complaint is captioned as one under the United States Constitution.

against sending state defendants that complains only of treatment in the sending state; he is claiming that the sending state contacts concerning the extradition from Maine (as opposed to his initial transfer to Maine) violated his rights. See id. at 283.  Overall, I do not see my way to sufficiently distinguishing this case from Hannon when it comes to the New Hampshire individuals alleged to be responsible for that extradition request, that is Callahan and Stewart.  I conclude that, in view of the complaint allegations and the exhibits relied on by the parties and under the precedents cited above, this Court can exercise personal jurisdiction over Callahan and Stewart.

But this does not necessarily resolve the issue of personal jurisdiction over the other defendants.  With respect to Khoury, it is alleged that he received a letter from Robinson while he was in custody in Maine and that the contents of this letter clearly pertained to the legitimacy of Robinson's extradition and the eventual parole determination.  However, by Robinson's own allegation Khoury did not respond to this letter.  Compare Kim, 607 F. Supp. 2d at 292-93.  As to Khoury, Coburn, Iverson, and Eckert, Robinson's claims against them are fairly limited to his complaints about the manner in which the New Hampshire Parole Board made the decision to revoke his parole in a New Hampshire proceeding.  I can see no basis to support this court's personal jurisdiction over them.[11]  As a consequence of this recommended decision, the Assistant Attorney General will have an opportunity both to object to my conclusion that personal jurisdiction lies as to Callahan and Stewart and also to articulate a preference to the Court should

---

[11]      The attorney for the defendants has expressed a concern about the fiscal strain on state resources.  Personal jurisdiction is a waivable defense, see DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 78 ( 1st Cir. 2000), and it is not clear to me that the New Hampshire Attorney General's office would want to split the baby at this juncture.

this recommendation be adopted regarding whether the entire matter should remain in this court.

Robinson, of course, will also have an opportunity to articulate any objection he may have.

### Conclusion

Based upon the foregoing, I recommend that the motion to dismiss be granted in part and that Coburn, Eckert, Iverson, and Khoury be dismissed from this action based upon lack of personal jurisdiction.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 25, 2010.

18